UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL JOHNSON #561762,

        Petitioner,

    v.                            Case No. 13-13080
                                           Hon. George Caram Steeh
CONNIE HORTON,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE INITIAL AND AMENDED HABEAS CORPUS PETITIONS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

This matter came before the Court on petitioner Darryl Johnson's pro se petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitions challenge petitioner's Michigan convictions for assault with intent to commit murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, carrying a concealed weapon ("CCW"), Mich. Comp. Laws § 750.227, and possession of a firearm during the commission of a felony ("felony-firearm"), Mich. Comp. Laws § 750.227b.  See ECF Nos. 1 and 17.  Petitioner asserts in his initial petition that the state trial court deprived him of due process by refusing to instruct the jury on the defense theory of self-defense.  In his amended petition,

petitioner appears to be raising the issues that he presented to the state trial court in a post-conviction motion, which alleged that his trial and appellate attorneys were ineffective and that he is entitled to re-sentencing.

Respondent Connie Horton urges the Court to deny the petitions. She argues through the Michigan Attorney General that:  the state court reasonably denied petitioner's claim about the lack of a jury instruction on self-defense because there was no evidence to support such an instruction; most of petitioner's amended claims are barred by the statute of limitations; and all of the claims about counsel are procedurally defaulted and meritless.  See ECF No. 25, PageID.114-115.

In a reply brief, petitioner maintains that his petitions are timely and that the Court can excuse a procedural bar when the default was the result of ineffective assistance of counsel.  He also contends that the state appellate court's denial of his claim without an evidentiary hearing was contrary to, and an unreasonable application of, clearly established Supreme Court law and that the appellate decision was based on an unreasonable determination of the facts.  See ECF No. 29, PageID.747.

The Court has determined from a review of the pleadings and record that the state appellate court's denial of petitioner's first claim regarding the lack of a jury instruction on self-defense was objectively reasonable.  The Court also has determined that petitioner's remaining claims are

procedurally defaulted because he did not raise those claims in the State's appellate courts while he still had an opportunity to do so.  Accordingly, the two habeas petitions will be denied.

## I.  Background

### A.  The Pretrial Matter and Trial

The charges against petitioner arose from an incident that occurred in Detroit, Michigan in 2010.  Petitioner was tried before a jury in Wayne County Circuit Court.

Before the prospective jurors entered the courtroom, the trial court asked a man with the surname Mays whether Mays had made any comments to the jury pool.  Mr. Mays responded that the only thing he had said to the jury pool was, "I hope you all make the right decision."  He denied saying anything more than that, other than, "Cause I know what a jury is." See 1/24/11 Trial Tr., ECF No. 26-7, PageID.250-251.  When the trial court asked Mays why he had felt the need to discuss anything with the jury pool, Mays answered, "I don't know.  It just came to my mind."  Id. at PageID 251.

The trial court then arranged to have the prospective jurors enter the courtroom.  Once they entered the courtroom, the court explained that Mr. Mays was a defendant in an unrelated matter and that the court had received information that Mays had said something more than, "Do the right thing" to them.  Id. at PageID.251-252.  The court further explained that it

- 3 -

wanted to make sure there had been no undue influence on any prospective jurors as a result of anything that may have been said to them outside the courtroom.  Id. at PageID.252.

The court then asked the prospective jurors to raise their hands and identify themselves if they thought that something inappropriate had occurred or if something was said that may have influenced them in favor of either the prosecution or the defense.  Id.  Apparently, no one raised a hand, because the court thanked the prospective jurors, excused Mr. Mays, and stated that, in an abundance of caution, it had wanted to make sure that nobody was trying to influence the jurors.  Id.

Jury selection followed, id. at PageID.253-324, and the prosecutor gave an opening statement, id. at PageID.335-339.  Defense counsel waived his opening statement.  Id. at PageID.339-340.

### 1.  The Prosecution Witnesses

The first witness was Jerry Tommy Bell, who testified that he was a former cab driver and that on September 1, 2010, or shortly before midnight on the preceding day, he received a call to pick up someone on Montclair Street.  When he arrived at the house, petitioner walked to his cab and stated that he wanted to go to Interstate Highway 75 (I-75).  Bell asked petitioner for a deposit because that was standard procedure. Petitioner gave him $5.00 and began to talk about an altercation that he

had with his daughter's boyfriend who pulled out a weapon.  He claimed that he had disarmed the boyfriend.  Id. at PageID.340-346.

When Bell got to Mack Avenue and I-75, he pulled over and informed petitioner that they had arrived at the destination.  Petitioner then asked Bell to drive behind the nearby McDonalds restaurant.  Bell refused to go there because he thought that petitioner might jump out or rob him. Petitioner claimed to have a pocket full of money, but he did not produce the money when Bell asked for the fare, and after they conversed some more, Bell informed petitioner that they were going to the police station.  As he got on I-75, petitioner said, "You're going to do me like this?"   Id. at PageID.347-349, 380.

Bell knew where there was a police station and a state police post. So, he drove from highway to highway until he came to Milwaukee Street. As he drove on the ramp off the highway, he heard two gunshots inside the cab, and petitioner began yelling, "I'm going to kill you.  That's two.  I'm going to kill you."  Bell thought that one gunshot passed by his face and that something hit his leg.  He made a right-hand turn onto the Boulevard, and when petitioner continued to say that he was going to kill Bell, Bell responded, "Well, we both going to go tonight."  Id. at PageID.350-352.

Bell then started to swerve the cab, hit the brake, and sideswipe trees to prevent petitioner from doing anything.  He was trying to get the attention

of a police officer, but at one point, he saw petitioner hanging out the window of the cab with a gun in his hand. Petitioner shot into the driver's side window where Bell was seated. Bell, meanwhile, aimed for trees as he tried to defend himself and hit petitioner with a tree. He hit a tree so hard that he broke his own jawbone and injured his leg and intestine. Id. at PageID.353-359, 381.

At trial, Bell did not remember hitting the tree, but he did remember trying to get out of the cab and running to the back of the cab where he encountered a state trooper's vehicle. One trooper ordered him to get down. He tried to explain to the trooper what had happened and that he had been shot, but he dropped to the ground when he saw the trooper's weapon. He later went to the hospital where some of his intestine was removed and a pin was inserted to hold his jawbone together. Id. at PageID.357-58, 383-84, 391-392.

Michigan state trooper James Milton Johnson testified that he heard squealing tires and something rapidly approaching as he was driving near West Grand Boulevard and Third Street early on September 1, 2010. He subsequently saw a taxicab, which was swerving across the lanes at a high rate of speed. A man's torso was hanging out the rear window of the cab behind the driver with his hands out, and as Trooper Johnson turned his

vehicle around, he heard at least three gunshots.  Then he saw the taxicab crash into a tree.  Id. at PageID.396-399.

When he and his partner arrived on the scene, the taxicab driver jumped out of the cab and started running to a building.  He (Trooper Johnson) tried to block the driver and then ran to the cab while his partner detained the driver.  He saw petitioner inside the cab, and when Detroit police officers arrived as back-up, they handcuffed petitioner, and an officer removed a gun from the rear of the taxicab.  He (Trooper Johnson) observed gunshots in the windshield of the cab, and he thought that the gunshots had come from inside the cab.  Id. at PageID.399-403.

Detroit Police Officer Lawrence Addison testified that when he arrived on the scene, he saw a yellow Checker cab that appeared to have crashed into a tree on the grassy median.  He saw Trooper Johnson standing on the driver's side of the vehicle near the rear window.  Petitioner was hanging out of the window with his arms stretched out.  He pulled petitioner out through the window and handcuffed him.  Id. at PageID.419-420.

A large revolver lying on the floor of the backseat was removed from the vehicle.  Other physical evidence included four spent casings, two live rounds, and two cell phones.  There were bullet holes in the windshield. Addison did not notice any bullet holes in the driver's seat or in the plexiglass between the driver and the passenger compartment, but a piece

of the plexiglass was missing.  Both Petitioner and the taxicab driver were

taken to the hospital, and after the facts were sorted out, petitioner was

arrested for assault with intent to commit murder.  Id. at PageID.420-425.

Michael Jackson, an investigator for the Detroit Police Department,

received evidence in the case and sent a lab request to the state police. He

also took photographs at the scene.  He thought that the victim's leg wound

may have resulted from the accident, and he was unable to say whether

the victim's facial injury was from a projectile or debris.

One of the photographs that he took depicted bullet holes in the

windshield of the cab; the holes were over the steering wheel, and they

were consistent with the four spent casings found inside the firearm.  He

thought that the gun had been fired from inside of the cab.  He did not see

any bullet holes on the back of the driver's seat, in the victim's clothes, or in

the plexiglass between the driver's seat and the passenger compartment.

The only part of the cab that showed signs of being struck by bullets was

the front windshield.  Id. at PageID.426-435.

## 2.  The Stipulations, Defense Theory, Jury Instructions, and Verdict

The parties stipulated that the Michigan State Police received a six-

shot revolver which did not malfunction during examination and that four

spent casings and some live rounds were returned to the Police

Department without any analysis.  The parties also stipulated that Petitioner was convicted of a felony in 2009 and that he had not met the requirements for possessing a firearm.  Id. at PageID.435-436.

Petitioner waived his right to testify and did not present any witnesses.  See 1/25/11 Trial Tr., ECF No. 26-8, PageID.442-444.  During closing arguments, defense counsel conceded petitioner's guilt on the firearm charges, id. at PageID.459, and he claimed that the physical evidence did not corroborate the victim's testimony.  Id. at PageID.453-454. Defense counsel also maintained that petitioner's intent was not to kill Mr. Bell, but to save his own life, and that petitioner's actions were justified because Mr. Bell had held petitioner against his will over a dispute in the fare and endangered his life by driving recklessly.  Id. at 455-461.

In the jury's absence, the trial court held a brief hearing on whether petitioner was entitled to a jury instruction on self-defense.  Defense counsel argued that petitioner was entitled to the instruction because he had a right to defend himself from the natural outcome of reckless driving. The prosecutor countered that, although defense counsel was free to argue a self-defense theory, there was no evidence that petitioner had acted in self-defense and, therefore, the prosecution could not rebut the defense. The trial court decided not to read the self-defense jury instruction because

there was no evidence of self-defense and the evidence was not consistent with that theory.  Id. at PageID.466-469.

The trial court did instruct on assault with intent to do great bodily harm less than murder as a lesser-included offense to assault with intent to commit murder.  Id. at PageID.479-80, 483.  On January 25, 2011, however, the jury found petitioner guilty, as charged, of assault with intent to commit murder, felon in possession of a firearm, CCW, and felony-firearm.  Id. at PageID.487-490.

**B.  The Sentence and Direct Appeal**

On February 8, 2011, the trial court sentenced petitioner as a habitual offender, fourth offense, to concurrent terms to 30 to 50 years in prison for the assault conviction, 20 to 40 years for the felon-in-possession conviction, and 15 to 30 years for the CCW conviction.  See 2/8/11 Sentence Tr., ECF No. 26-9, PageID.499-500   The court sentenced petitioner to a consecutive 2-year term for the felony-firearm conviction.  Id. at PageID.500.

In a delayed application for leave to appeal, petitioner raised a single issue through counsel:  whether the trial court deprived him of his constitutional right to present a defense by refusing to instruct the jury on self-defense.  See Application for Leave to Appeal and Brief in Support, ECF No. 26-13, PageID.689-690, 697-698.  The Michigan Court of Appeals

denied the application for lack of merit in the ground presented to the court.

See People v. Johnson, No. 305388 (Mich. Ct. App. Mar. 8, 2012).

Petitioner raised the same issue in the Michigan Supreme Court.

See Pro Per Application for Leave to Appeal, ECF No. 26-14, PageID.712-722.  On July 24, 2012, the Michigan Supreme Court denied leave to

appeal because it was not persuaded to review the issue.  See People v.

Johnson, 492 Mich. 855; 817 N.W.2d 83 (2012) (table).

## C.  The Initial Habeas Petition and Motion for Relief from Judgment

On July 18, 2013, Petitioner filed his initial habeas corpus petition.

His sole argument was that the trial court deprived him of his right to

present a defense by refusing to instruct the jury on self-defense.  See Pet.,

ECF No. 1, PageID.2-3. In a motion filed on the same day, petitioner asked

the Court to hold his habeas petition in abeyance while he pursued state-

court remedies for a new claim about his trial attorney's failure to properly

raise a claim of self-defense.  See Mot., ECF No. 3, PageID.18.  On

October 8, 2013, the Court granted petitioner's motion and closed this case

for administrative purposes.  See Order, ECF No. 8.

On September 22, 2015, petitioner filed a motion for relief from

judgment in the state trial court.  See Mot. for Relief from J., ECF No. 26-

10.  He argued that trial counsel was ineffective for failing to (1) investigate

and make a timely request for a self-defense jury instruction, (2) request

discovery material and the victim's medical records, (3) object to the

prosecutor's alleged use of perjured testimony, and (4) object to the trial

court's failure to ask a deputy and the jury what else Mr. Mays said in their

presence.  He also claimed that appellate counsel was ineffective for failing

to argue that trial counsel was ineffective.  Id. at PageID.505-506.

In a motion to supplement the post-conviction motion, petitioner

argued that trial counsel was ineffective for failing to investigate and argue

that the prosecutor did not file a timely written notice of intent to seek an

enhanced sentence.  Petitioner also claimed that appellate counsel was

ineffective for (1) not raising the issue of trial counsel's failure to object to

the untimely habitual offender charge and (2) not arguing that Petitioner

was denied access to the court and appointment of appellate counsel.

Finally, he claimed that he was entitled to be resentenced.  See Mot. to

Amend/Supplement Mot. for Relief from J., ECF No. 26-11, PageID.596,

598, 602-603.

The trial court granted petitioner's motion to amend, but it denied the

motion for relief from judgment.  The court stated that petitioner was re-

asserting the same self-defense issue that he presented to the Michigan

Court of Appeals and that he had not shown "good cause" under Michigan

Court Rule 6.508(D)(3) for not raising his other claims on appeal.  The

court also opined that the evidence against petitioner at trial was

- 12 -

overwhelming, that the sentences imposed were appropriate and proportional, and that all of petitioner's claims were "wholly without merit." See People v. Johnson, Op. and Order, No. 10-009715-01-FC (Wayne Cty. Cir. Ct. Sept. 30, 2016); ECF No. 26-15.  Petitioner did not appeal the trial court's decision.

### D.  The Amended Habeas Petition

In 2018, petitioner asked the Court to re-open this case.  See Letter, Request, and Mot., ECF Nos. 12, 13, and 15.  On July 24, 2018, the Court granted petitioner's requests and ordered him to file an amended petition for the writ of habeas corpus within thirty days of the Court's order.  See Order, ECF No. 16.

On August 6, 2018, petitioner filed another habeas corpus petition. See Am. Pet., ECF No. 17.  Because he did not label it as an amended petition or write the case number for this case on his pleading, the Clerk of Court treated the petition as a new case and assigned it to United States District Judge Sean F. Cox.  See Johnson v. Bauman, No. 2:18-cv-12433 (E.D. Mich. Aug. 6, 2018).  On August 28, 2018, Judge Cox closed his case as duplicative of this case and directed the Clerk of Court to file the petition in this case.  See Johnson v. Bauman, No. 2:18-cv-12433 (E.D. Mich. Aug. 28, 2018).  The petition was then filed as an amended petition in this case.

- 13 -

See ECF No. 17.[1]  The grounds for relief in the amended petition read as

follows:

> 1.     My lawyer refused to file motions on my behalf.
>
> 2.     I filed a motion for effective counsel and was refused.
>
> 3.     I was refused a right to appeal.

Id. at PageID.84.

Petitioner did not support these claims with any facts.  Nor did he file

a supporting brief, but he did attach to his amended petition the trial court's

order denying his motion for relief from judgment.  The Court, therefore,

construes the amended petition as raising the same claims that petitioner

presented to the state trial court in his motion for relief from judgment and

his supplement to that motion.

---

[1]  Because petitioner has not abandoned the issue raised in his initial petition, his second petition supplements, rather than replaces, his initial petition.  The Court, nevertheless, will refer to the 2018 petition as an amended petition even though, technically, it might not be an amended petition.  See Braden v. United States, 817 F.3d 926, 930 (6th Cir. 2016):

> "Generally, amended pleadings supersede original pleadings."  Hayward v. Cleveland Clinic Found., 759 F.3d 601, 617 (6th Cir. 2014).  This rule applies to habeas petitions.  See Calhoun v. Bergh, 769 F.3d 409, 410 (6th Cir.2014) cert. denied sub nom. Calhoun v. Booker, —— U.S. ——, 135 S.Ct. 1403, 191 L.Ed.2d 374 (2015). However, we have recognized exceptions to this rule where a party evinces an intent for the amended pleading to supplement rather than supersede the original pleading, see Clark v. Johnston, 413 Fed. Appx. 804, 811–12 (6th Cir. 2011) . . . .

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " Wilson v. Sellers, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that:

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)) (alterations added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id., at 413, 120 S.Ct. 1495.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  Id., at 410, 412, 120 S.Ct. 1495.  The state court's application of clearly established law must be objectively unreasonable.  Id., at 409, 120 S.Ct. 1495.

Id. at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]' " Renico v. Lett, 559 U.S. 766, 773 (2010) (internal and end citations omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Thus, "[o]nly an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254."  Saulsberry v. Lee, 937 F.3d 644, 648 (6th Cir.) (quoting Richter, 562 U.S. at 103), cert. denied, 140 S. Ct. 445 (2019).  "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" Kendrick v. Parris, 989 F.3d 459, 469 (6th Cir. 2021) (quoting Woods v. Donald, 575 U.S. 312, 316 (2015)).

### III.  Discussion

### A.  The Trial Court's Failure to Instruct the Jury on Self-Defense

Petitioner alleges in his initial petition that the state trial court deprived him of his constitutional right to present a defense by refusing to

instruct the jury on self-defense.  He also alleges that, under state law, he had a right to a jury instruction on his theory of the case.

Petitioner contends that he did not take any action until Mr. Bell, in effect, kidnapped him and attempted to harm him with his reckless driving. He claims that the obvious threat to his safety was enough to substantiate the need for, and propriety of, a self-defense instruction.  Petitioner concludes that, because there was some evidentiary support for a jury instruction on self-defense, the trial court erred in not reading the instruction.  Petitioner raised this claim on direct review, but the Michigan Court of Appeals denied leave to appeal for lack of merit in the claim.

### 1.   Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment requires criminal prosecutions to "comport with prevailing notions of fundamental fairness," and the Supreme Court has "interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."  California v. Trombetta, 467 U.S. 479, 485 (1984).  A necessary corollary of the right to present a complete defense "is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions."  Taylor v.

Withrow, 288 F.3d 846, 852 (6th Cir. 2002).  "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  Mathews v. United States, 485 U.S. 58, 63 (1988); *see also* Taylor, 288 F.3d at 851 (holding that the right of a defendant in a criminal trial to assert self-defense is a fundamental right "and that failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause").

But on habeas review of jury instructions, the question is whether flawed instructions infected the entire trial to such an extent that the resulting conviction violates due process.  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  "[A] state court's interpretation of the propriety of a jury instruction under state law [generally] does not entitle a habeas claimant to relief."  Rashad v. Lafler, 675 F.3d 564, 569 (6th Cir. 2012).  And "[t]he failure to give a requested self-defense instruction . . .  does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction."   Allen v. Morris, 845 F.2d 610, 617 (6th Cir. 1988) (citing (Melchior v. Jago,723 F.2d 486, 493-94 (6th

Cir. 1983)).

### 2.  Application of the Law

In Michigan, "[t]he defendant does not have to prove that [he / she] acted in self-defense.  Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense." M Crim JI 7.20.  The use note to his instruction states that "[t]his instruction should be given where there is some evidence of self-defense.  If there is no evidence of self-defense, no instructions on self-defense should be given."  See id. Similarly, the jury instruction on the use of deadly force in self-defense should be used only "where some evidence of self-defense has been introduced or elicited."  M Crim JI 7.15, Use Note.

Petitioner did not testify at trial or present any witnesses in his behalf. Thus, there was no evidence that he thought his life was in danger and that he acted in self-defense.  The self-defense theory was presented to the jury for the first time in defense counsel's closing argument.

Mr. Bell, moreover, testified that the first two gunshots came from within the taxicab as he was driving up the ramp from the highway to Milwaukee Street.  It was after those initial gunshots and petitioner's threats to kill Bell that Bell started to swerve the cab, hit the gas pedal, and swipe trees to prevent petitioner from taking aim at him.  See 1/24/11 Trial Tr.,

ECF No. 26-7, PageID.350-352.

The evidence at trial did not warrant a jury instruction on self-defense. The state trial court, therefore, did not err by refusing to read the jury instructions on self-defense.  Additionally, the state appellate court's denial of leave to appeal for lack of merit in petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  The appellate court's decision also was not based on an unreasonable determination of the facts.  Petitioner has no right to relief on his claim.

## B. Petitioner's Remaining Claims

### 1.  The Statute of Limitations Defense

The claims asserted in petitioner's amended petition are conclusory and unclear.  He merely states that his lawyer refused to file motions on his behalf, that his motion regarding counsel's assistance was refused, and that he was denied his right to an appeal.  ECF No. 17, PageID.84.  The Court has construed these claims to be the same claims that petitioner presented to the state trial court during post-conviction proceedings. Respondent contends that most of those claims are barred by the one-year statute of limitations because the amended petition was filed after the statutory period expired and because the claims do not relate back to the initial petition.

The habeas statute of limitations is not jurisdictional, Holland v. Florida, 560 U.S. 631, 645 (2010) (quoting Day v. McDonough, 547 U.S. 198, 205 (2006)), and the Court has determined that petitioner's remaining claims are procedurally defaulted.  Accordingly, the Court declines to analyze whether the amended habeas petition is time-barred.

### 2.  The Procedural-Default Defense

Respondent contends that petitioner's claims about his trial and appellate attorneys are procedurally defaulted because (1) the trial court rejected most of the claims due to petitioner's failure to raise the claims on direct appeal, and (2) petitioner did not appeal the trial court's decision. The Court agrees with the latter argument, because petitioner's failure to raise his claims in the State's appellate courts when he had the opportunity to do so implicates the exhaustion and procedural default requirements in habeas corpus cases.  Gray v. Netherland, 518 U.S. 152, 161 (1996).[2]

### a.  The Exhaustion and Procedural-Default Doctrines

The doctrine of exhaustion of state remedies requires state prisoners to give the state courts an opportunity to act on their claims before they present their claims to a federal court in a habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1), (c); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

---

[2]  Because this conclusion is dispositive of petitioner's remaining claims, the Court finds it unnecessary to consider whether petitioner's ineffectiveness claims also are barred by his failure to raise the claims on direct appeal.

The exhaustion requirement is satisfied if the prisoner "invok[es] one complete round of the State's established appellate review process," including a petition for discretionary review in the State's highest court "when that review is part of the ordinary appellate review procedure in the State." O'Sullivan, 526 U.S. at 845, 847. Thus, to properly exhaust state remedies, a prisoner must fairly present the factual and legal basis for each of his claims to the state court of appeals and to the state supreme court before raising the claims in a federal habeas corpus petition. Wagner v. Smith, 581 F.3d 410, 414-15 (6th Cir. 2009).

The exhaustion requirement, however, refers only to remedies still available at the time of the federal petition; it is satisfied if the habeas petitioner's claims are now procedurally barred under state law. Gray, 518 U.S. at 161. Stated differently,

> [e]xhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994); accord Carruthers v. Mays, 889 F.3d 273, 288 (6th Cir. 2018) (stating that, when a claim is unexhausted, but no state remedy remains available, the claim is

procedurally defaulted, and a federal habeas court may not review the claim without a showing of cause and actual prejudice), cert. denied, 139 S. Ct. 1173 (2019); West v. Carpenter, 790 F.3d 693, 697 (6th Cir. 2015) (stating that, "[i]f the petition[er] fails to raise a claim on appeal, in violation of a state procedural rule, that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for his default").

### b. Application of the Doctrines

The state trial court denied petitioner's motion for relief from judgment on September 30, 2016.  See ECF No. 26-15.  Petitioner then had six months to appeal the trial court's decision.  Mich. Ct. R. 6.509(A).  He did not appeal the trial court's decision.  Instead, he returned to federal court and asked to have his habeas petition re-opened.  By seeking to lift the stay of his federal case instead of appealing the state trial court's order on his claims, he failed to give the state appellate courts an adequate opportunity to analyze the claims.  Taylor v. McKee, 649 F.3d 446, 451-52 (6th Cir. 2011).

Furthermore, because the deadline for appealing the state court's decision expired years ago, petitioner no longer has a state remedy to exhaust, and the claims in his amended petition must be treated as

exhausted, but procedurally defaulted.  He must show "cause" for his procedural error and actual prejudice to have his claims heard on the merits now.

Petitioner has not alleged "cause" for his failure to appeal the trial court's decision, and he cannot blame his appellate attorney for the error because he represented himself during post-conviction proceedings in state court.  In one of his letters to the Court, petitioner alleged that he relied on a legal writer due to his illiteracy and that the legal writer failed to inform him that he could appeal the trial court's decision on his post-conviction motions.  See Letter, ECF No. 20, PageID.104.

Petitioner's ignorance of the law and the procedural requirements for filing a timely notice of appeal are insufficient to establish cause for his procedural default.  Bonilla v. Hurley, 370 F.3d 494, 498 (6th Cir. 2004); see also Hannah v. Conley, 49 F.3d 1193, 1197 (6th Cir. 1995) (stating that the petitioner's "pro se status and ignorance of his rights [did] not constitute cause excusing his failure to raise grounds before the state courts")  (citing Ewing v. McMackin, 799 F.2d 1143, 1151 (6th Cir. 1986)).  Illiteracy and reliance on a legal writer also do not constitute cause for a procedural default.  Henderson v. Cohn, 919 F.2d 1270, 1272-73 (7th Cir. 1990). Petitioner, therefore, has failed to show cause for not appealing the state

trial court's decision on his post-conviction motion, and the Court need not determine whether petitioner was prejudiced by his procedural error.  Smith v. Murray, 477 U.S. 527, 533 (1986); Simpson v. Jones, 238 F.3d 399, 409 (6th Cir. 2000).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that a "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The actual-innocence gateway "is a narrow one" that " 'applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner].' "  Davis v. Bradshaw, 900 F.3d 315, 326 (6th Cir. 2018) (quoting McQuiggin v. Perkins, 569 U.S. 383, 395 (2013)), cert. denied, 139 S. Ct. 1619 (2019). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."

Schlup v. Delo, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new evidence of actual innocence, and at his sentencing, he merely claimed that he was improperly charged with attempted (sic) murder because the victim did not get shot. See 2/8/11 Sentencing Tr., ECF No. 26-9, PageID.498-499. Because petitioner has not provided the Court with any new and reliable evidence of actual innocence, a miscarriage of justice will not result from the Court's failure to adjudicate his claims about his former attorneys and his sentence.

## IV. Conclusion

Petitioner's claims about his trial and appellate attorneys and his sentence are procedurally defaulted, and the state appellate court's adjudication of petitioner's claim about the lack of a jury instruction on self-defense is objectively reasonable. The state appellate court's decision also is not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the initial petition and the amended petition for the writ of habeas corpus are denied.

The Court declines to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of petitioner's claims, nor conclude that the issues deserve encouragement to

proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Nevertheless, because the

Court granted petitioner permission to proceed in forma pauperis in this

Court, and because an appeal could be taken in good faith, petitioner may

proceed in forma pauperis on appeal if he appeals this decision.  28 U.S.C.

§ 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Dated:  June 14, 2021

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 14, 2021, by electronic and/or ordinary mail and also on
Darryl Johnson #561762, Alger Maximum Correctional
Facility, N6141 Industrial Park Drive, Munising, MI 49862.

s/Leanne Hosking
Deputy Clerk

---